# Clark v. Butler Junction Coal Company, Appellant.

*Negligence—Master and servant—Mines and mining—Damages.
—Measure of damages—Evidence—Character of treatment for injuries—Cross-examination of plaintiff.*

1. In an action for personal injuries, where it appears that at the time of the accident, plaintiff was engaged in an occupation yielding him a low wage, it is nevertheless competent for him to prove that he is skilled at other occupations paying a higher wage, especially where it appears that his inability to pursue a more profitable occupation at the time of the injury was due to a temporary condition in the financial and industrial world.

2. In such case, however, it was error to permit the plaintiff to express a guess as to what wages he could earn at the more profitable occupation, in the absence of evidence as to the general wage scale for such labor or that the witness was distinguished by superior capacity over others in his class of employment.

3. Where in an action for personal injuries the plaintiff testifies as to the extent and character of his injuries and the pain and suffering he endured, the defendant is entitled to cross-examine him as to what he did or failed to do in order to obtain relief and improvement, and it is error for the court to refuse to allow plaintiff to be cross-examined with respect to the medical and surgical treatment he received, if any, immediately following the injury.

4. Where in an action against a coal mining company the negligence charged was in allowing an uncovered hole to be in the path of an employee whose daily task was to push loaded cars over the hole, it was no part of the plaintiff's case to show that the maintenance of such hole was exceptional, and out of the usual custom

of the operation of coal mines, and an objection to the admission of such evidence, should have been sustained.

Argued Sept. 26, 1917.   Appeal, No. 81, Oct. T., 1917, by defendant, from judgment of C. P. Armstrong Co., March T., 1916, No. 49, on verdict for plaintiff, in case of John J. Clark v. Butler Junction Coal Company, a corporation under the laws of Pennsylvania.   Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.   Reversed.

Trespass to recover damages for personal injuries. Before KING, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,980 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*H. A. Heilman,* with him *F. C. Jones,* for appellant, cited: Quigley v. P. R. R. Co., 210 Pa. 162; Com. to use v. Julius et al., 173 Pa. 322; Honesdale Glass Co. v. Storms, 125 Pa. 268; Bassler v. Niesly, 2 Ser. & R. 352; Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625; McGeehan v. Hughes, 217 Pa. 121.

*Harry C. Golden,* with him *C. E. Harrington,* for appellee, cited: Kuhn v. Ligonier Valley R. R. Co., 255 Pa. 445; Burns v. Vesta Coal Co., 223 Pa. 473; Solt v. Williamsport Radiator Co., 231 Pa. 585; Hollis v. Widener, 221 Pa. 72; Smiers v. Ford Collieries Co., 252 Pa. 415; Martin v. Atlantic Transport Co., 237 Pa. 15; Mack v. Pittsburgh Rys. Co., 247 Pa. 598.

OPINION BY MR. JUSTICE STEWART, January 7, 1918:

The plaintiff, a man fifty-six years of age, had been a coal miner for upwards of thirty years.   When injured

he was in the employ of the defendant company and had been for about four months previous, not however as a miner, but as a helper at the surface of the mine. His task was to push from the pit mouth the loaded cars as they came from the mine below over a short track of railroad into what is spoken of as the check house, where the cars were placed on an incline and thence carried to a tipple below. While so engaged, between the hours of six and seven in the morning of January 1, 1915, he was injured by stepping into a hole, unobserved by him, between the tracks of the road over which he was pushing several cars to the check house. In this hole, about twenty-eight inches in length by twelve in width, there was machinery by which the descent of the cars on the incline was controlled, consisting of a revolving wheel and drum over which a rope or cable passed, which it was the duty of the plaintiff to attach to the cars before they were placed on the incline. The hole was uncovered and without guard. The result of plaintiff's misstep into it was, that he was seriously injured in his right knee, so he charges. For the service he was rendering the defendant company he was receiving a wage of two dollars per day. He recovered a verdict of $3,980.00, and the appeal is from the judgment thereon.

The errors assigned are fourteen in number. They may be compressed within narrower limit. Fully a half dozen of the assignments complain of undue latitude allowed in the testimony of the plaintiff himself when on the stand, special reference being to so much of the testimony as related to the wages he had earned when engaged as a coal miner four months before his injury; to his testimony that his purpose at the time of the injury was to resume work as a miner when opportunity afforded; to his explanation of the fact that he was working for a much less wage when injured than that he was accustomed to receive as miner, and that but for the injury he received, he could readily earn at mining from six to eight dollars a day. These assignments rest on tech-

nical grounds, and while several of them are not without merit, we are not convinced that the error they point to was substantial, or that prejudice resulted to the defendant in consequence of the admission of the evidence complained of. One element of damages in cases of this character is loss of earning power, and one way—sometimes the only one—of measuring such damage, is by the difference in wage; but care must be observed to distinguish between the thing itself which is the basis of recovery and the method adopted for its measurement. This plaintiff, although he had been a miner of coal for more than thirty years, at the time of his accident, and during the whole period in which he was so employed by the defendant, was receiving but two dollars per day. It was perfectly competent for him to show that he regarded his employment of pushing cars as but temporary; that the coal company that had employed him as miner had suspended operation because of market conditions, and that it was because of this suspension he engaged with the defendant company for such work as yielded him a much less wage than he had been accustomed to receive, and that he contemplated returning to the work of mining when market conditions changed. It was not pretended that his change of employment was due to any decline in his earning capacity as a miner. Under these circumstances it would have been manifestly unfair to use the lower wage he received from the defendant company as a basis for estimating his loss in earning capacity. While this is true, it was, nevertheless, error to allow the examination of the witness on this branch of the case to proceed as it did, against the objection of the defendant. For instance, this question was asked him: "If you were able to take such position at the present time, and work in the same way that you worked before the accident in a coal mine, what would you be able to make at the present time?" His answer was: "I could make six to seven dollars a day." There was but one way of proving this, and that was by proving the general wage scale for such

labor, in the absence of any testimony that the witness was distinguished by superior capacity over the ordinary miner. As asked and answered, the jury was given no other basis for determining this most important question than a mere conjecture of the plaintiff. It is complained that as thus presented, the testimony was calculated to swell unduly the damages allowed for loss of earning capacity. The fourth assignment of error is sustained.

Another assignment complains of the refusal of the court to allow on cross-examination the plaintiff to be inquired of with respect to the medical and surgical treatment he received, if any, immediately following upon his injury. Plaintiff was injured January 1, 1915. He testified that he first consulted a physician during the following June, who simply advised the use of a rubber supporter, which he thereafter did use, and that he exhibited his injured limb to no other professional person for a year thereafter, and then not for advice or treatment, but in the preparation of his case for trial. Counsel for defendant proposed to ask the witness where he resided at the time of his accident, whether or not he had a family physician, and whether he had consulted him as to his injury at any time. This was objected to on the ground of immateriality and the objection was sustained. The question was entirely proper. The plaintiff having testified as to the extent and character of his injuries, the pain and suffering he endured, the defendant had a right on cross-examination to get from him the fullest particulars, both as to what he did and what he failed to do to obtain relief and improvement. This assignment is sustained.

Still another complains of the admission of the testimony of the two witnesses, Dinninger and Troup, as to the method here adopted of maintaining an uncovered hole such as this was, between the rails of a track on which the loaded cars were pushed from the mouth of the pit to the check house, whether the same was customary and usual in like places of work. This objection should

have prevailed. The negligence charged was allowing such an uncovered hole as this was shown to be, in the path of the employee whose daily task was to push loaded cars over it. It was no part of plaintiff's case to show it to be exceptional, out of the usual custom in the operation of coal mines. The party charging negligence does not show it by showing that the appliance which caused the injury was not in common use: Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625. It is proper for the defendant in defending against the charge of negligence to show, if it can, that it was the custom to maintain such hole in the condition described, whether from necessity or otherwise; but "the evidence should not in the first instance be admitted on behalf of the plaintiff unless it tends to show that the method pursued was not only unusual, but more dangerous in itself than the ordinary one": Cunningham v. Bridge Works, supra. This assignment is also sustained.

The affirmance of plaintiff's second point as to the applicability of the Act of June 2, 1913, P. L. 396, to this action, as qualified by the court, was without prejudice to the defendant. Without this, it is so unrelated to anything suggested in appellant's statement of question involved that it calls for no consideration here, and this assignment of error is therefore dismissed: Smith v. The Lehigh V. R. R. Co., 232 Pa. 456.

The judgment is reversed and a venire facias de novo is awarded.